FILED '08 JUL 22 11:51 USDC-ORP

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

**CV '08 - 8 65 - - KI**

BENEFICIAL OREGON INC. a Delaware
Corporation,

Case No.

Plaintiff,

COMPLAINT FOR
DECLARATORY JUDGMENT

v.

BRIDGET A. CANTY,

Defendant.

## I. COMPLAINT

Plaintiff, BENEFICIAL OREGON INC, ("Lender"), a Delaware corporation licensed to do business in Oregon, sues defendant BRIDGET A. CANTY ("Borrower"); and alleges as follows:

## II. NATURE OF THIS ACTION

1.    This is an equitable action for declaratory judgment pursuant to the Declaratory Judgment Act (the Act) which permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy," 28 U.S.C. § 2201, and other equitable relief.

2.    Lender seeks in this action a declaratory decree that, in order to effectuate Borrower's election to rescind her loan with Lender pursuant to the Truth in Lending Act,

COMPLAINT FOR
DECLARATORY RELIEF - 1

**ORIGINAL**

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

15 U.S.C. § 1601, *et seq* ("TILA"), Borrower must repay the loan proceeds less all interest, origination fees, servicing fees and principal paid.

## III. PARTIES, JURISDICTION, AND VENUE

3.     Lender is a Delaware corporation in the business of financing home loans to borrowers in Oregon and is registered to conduct business in Oregon.

4.     On information and belief, Borrower is an individual residing in Multnomah County, Oregon.

5.     This Court has jurisdiction under 28 U.S.C. § 1331 as the action involves the rescission of a loan pursuant to TILA, 15 U.S.C. § 1635.

6.     Venue is proper in this court as the Borrower resides in Multnomah County, Oregon, entered into a contract with Lender in the State of Oregon that required performance in the State of Oregon and directly relates to the subject matter of this action, and committed acts in the State of Oregon that directly relate to the subject matter of this action.

7.     All conditions precedent to commencement of this action have occurred or have been performed, excused, satisfied, or waived.

## IV. GENERAL ALLEGATIONS

8.     On or about June 26, 2007, Lender made a loan ("Loan") to Borrower in the original principal sum of $200,769.41, secured by Borrower's primary residence located at 1731 NE Highland Street, Portland, Oregon  97211 and legally described as follows:

> LOT   12,   BLOCK   9,   COLUMBIA   HEIGHTS, PORTLAND, MULTNOMAH COUNTY, OREGON.

COMPLAINT FOR
DECLARATORY RELIEF - 2

Copies of the promissory note and mortgage evidencing the Loan are attached hereto as Exhibit A.

9.    Subsequently, Lender learned of an error in the TILA disclosures provided to Borrower.

10.    Lender immediately issued new, corrected disclosures to Borrower, along with two copies of a renewed "Notice of Right to Cancel", pursuant to 15 U.S.C. § 1635(a). A copy of the Notice of Right to Cancel is attached hereto as Exhibit B.

11.    The Notice of Right to Cancel permitted Borrower to rescind the Loan without cost, obligating Borrower to repay the loan proceeds less all interest, origination fees, servicing fees and principal paid ("Net Loan Proceeds"), and obligating Lender to cancel the mortgage lien on Borrower's property.

12.    Borrower elected to execute the Notice of Right to Cancel, and returned the same to Lender on or about July 7, 2008, a copy of which is attached hereto as Exhibit B.

13.    By letter dated July 10, 2008, Lender acknowledged receipt of the executed Notice of Right to Cancel, and advised Borrower to pay the Net Loan Proceeds, in the amount of $183,417.18, a copy of which is attached hereto as Exhibit C.

14.    As of the date of filing this complaint, Borrower has failed and/or refused to repay the Net Loan Proceeds, and Lender is unsure of its obligations with respect to cancellation of the mortgage lien on Borrower's property.

## V. TILA RESCISSION

15.    Title 15 U.S.C. § 1635 establishes the procedure for rescission, and provides:

COMPLAINT FOR
DECLARATORY RELIEF - 3

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

1
2
3
4
5
6

> When [borrower] exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by [borrower], including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, [lender] shall return to [borrower] any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. ... <u>The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.</u>

7
8

15 U.S.C. § 1635(b) (emphasis added).

9      16.    Regulation Z, 12 C.F.R. § 226.1 et seq., which implements TILA, reiterates

10   the procedures above.  However, Regulation Z also makes clear that the court can modify

11   the rescission procedures: "The procedures outlined in paragraphs (d) (2) and (3) of this

12   section may be modified by court order." 12 C.F.R. § 226.23(d) (4).

13     17.    Importantly, the last sentence of TILA section 1635(b) was added as part of

14   the Truth in Lending Simplification and Reform Act, Pub. L. No. 96-221, tit. IV, §

15   612(a)(4), 94 Stat. 132, 175 (1980), codified as amended at 15 U.S.C. § 1635(b).  The

16   amendment clarified Congress' intent that the courts have the authority to return the parties

17   to their positions *status quo ante*. *See, eg. Williams v. Homestake Mortgage Co.*, 968 F.2d

18   1137, 1140 (11th Cir. 1992) (conditioning the lender's duties on the borrower's tender of

19   the lender's money).

20

21     18.    Courts look to equitable considerations in determining how to apply the

22   equitable remedy of rescission.  *See, e.g., Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d

23   815, 820 (4th Cir. 2007) ("The equitable goal of rescission under TILA is to restore the

24   parties to the 'status quo ante.'"); *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173

25   (9th Cir. 2003) (noting the "statutory and regulatory regime of leaving courts free to

COMPLAINT FOR
DECLARATORY RELIEF - 4

exercise equitable discretion to modify rescission procedures"); *Williams v. Homestake Mortgage Co.*, 968 F.2d at 1142 ("a court may impose conditions that run with the voiding of a creditor's security interest upon terms that would be equitable and just to the parties in view of all surrounding circumstances."); *In re Miller*, 320 B.R. 203, 210 (Bankr. N.D. Ala. 2005) ("Rescission is an equitable remedy and courts may condition its allowance upon the borrower's return of those funds advanced by the creditor."); *Quenzer v. Advanta Mortg. Corp. USA*, 288 B.R. 884, 888 (D. Kan. 2003) ("although a debtor's tender back is not mandated as a prerequisite to rescission, it may be an appropriate condition attached thereto under certain circumstances because of the equitable nature [of] that statutory remedy").

19.    As a result, courts have consistently held that borrowers should repay the loan before the lender is required to release its mortgage lien on the borrowers' home. *See Decision One Mortgage Co., LLC v. Fraley*, 238 F.3d 420 (6th Cir. 2000) (borrowers to repay the loan as a condition precedent to the lender releasing its security interest); *Powers v. Sims & Levin*, 542 F.2d 1216 (4th Cir. 1976) (conditional rescission is appropriate where it does not appear that the borrower intends or is able to repay the lender's money); *AFS Financial, Inc. v. Burdette*, 105 F. Supp.2d 881 (N.D. Ill. 2000) ("It is now well settled that a court, in the exercise of its equitable discretion … can condition rescission upon tender of amounts previously advanced, leaving the security interest in place until the tender is made."); *Mitchell v. Security Investment Corp. of the Palm Beaches*, 464 F. Supp. 650, 652 (S.D. Fla. 1979) (return of the loan principal consistent with the statutory goal of returning the parties to the status quo before they entered into the contract); *Dotter v. Texas Commerce Bank Nat'l Ass'n*, 679 So.2d 1215, 1216 (Fla. 4th DCA 1996) (per

COMPLAINT FOR
DECLARATORY RELIEF - 5

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

curiam) (trial court's order modifying the terms of rescission was proper under 15 U.S.C.A. § 1535(b)); *Hull v. Bowest Corp.*, 649 P.2d 334, 338 (Colo. Ct. App. 1982) ("Congress did not intend that the creditor relinquish its security interest when the debtors, as here, do not intend or are not prepared to tender restitution of the funds borrowed."); *Canal Mortgage and Finance Co. v. Jackson*, 390 So.2d 1347, 1353 (La. Ct. App. 1980) (borrower under TILA entitled to rescission, not forfeiture of lender's property).

20.    Several courts have imposed similar equitable conditions, such as requiring the debtor to tender performance contemporaneously with the creditor or to otherwise provide suitable assurances of its ability to pay before the creditor tenders its performance. *See, e.g., Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) (trial court had discretion to modify sequence of rescission to ensure that borrower could repay loan proceeds "before going through the empty (and expensive) exercise of a trial on the merits"); *Am. Mortg. Network, Inc. v. Shelton*, 486 F.3d 815, 820-21 (4th Cir. 2007) ("Clearly it was not the intent of Congress to reduce the mortgage company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without interest."); *FDIC v. Hughes Dev. Co.*, 938 F.2d 889, 890 (8th Cir. 1991) (district court properly conditioned rescission on tender of $100,000 principal within one year); *In re Sterten*, 352 B.R. 380, 387 (Bankr. E.D. Pa. 2006) ("permitting a consumer a reasonable time frame to repay the creditor while the creditor retains the security interest it acquired in the rescinded transaction [is] a balanced, equitable approach"); *Egipciaco Ruiz v. R & G Financial Corp.*, 383 F. Supp.2d 318, 321 (D.P.R. 2005) (following the "vast majority of courts" that have "conditioned the right of rescission upon the consumer's tender of the amount borrowed when the consumer's ability to tender has been questioned"); *In re*

COMPLAINT FOR
DECLARATORY RELIEF - 6

*Wepsic,* 231 B.R. 768, 776 (Bankr. S.D. Cal. 1998) ("the benefits of rescission" were conditioned upon the debtor's "tender of her duty of repayment under the statute").

## VI.  COUNT I – DECLARATORY JUDGMENT

21.    Lender realleges and incorporates by reference paragraphs 1 through 20, above, as if fully set forth herein.

22.    Lender brings this action for declaratory relief pursuant the Declaratory Judgment Act 28 U.S.C. § 2201.

23.    At present, a significant controversy exists between the parties as to whether Borrower must repay the Net Loan Proceeds prior to Lender's release of the mortgage.

24.    There has arisen and now exists an actual controversy between Lender and Borrower regarding the orderly rescission of the Loan.  Borrower seeks to rescind the Loan, as evidenced by the Notice of Right to Cancel.  Lender is prepared to accommodate rescission of the Loan, but contends that it is entitled to receive the Net Loan Proceeds before release of the mortgage.

25.    Accordingly, there exists a bona fide, actual, and present practical need for a declaration, which declaration deals with a present, ascertained or ascertainable state of facts, and Borrower has an actual, present, adverse, and antagonistic interest in the subject matter of the dispute.

26.    Lender is entitled to a declaratory decree to afford it relief from insecurity and uncertainty with respect to rescission of the Loan.

COMPLAINT FOR
DECLARATORY RELIEF - 7

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306  FAX: 206/622-0354

## VII. REQUEST FOR RELIEF

WHEREFORE, Lender respectfully requests that this Court enter a judgment in its favor and against Borrower, and order:

A.    A declaratory decree that rescission of the Loan requires that Borrower tender the Net Loan Proceeds simultaneous with Lender's cancellation of the mortgage lien;

B.    A declaratory decree that Borrower's failure to tender the Net Loan Proceeds relieves Lender of its obligations in rescission; and

C.    Such other relief as the Court deems equitable, just and proper.

RESPECTFULLY submitted this 21st day of July, 2008.

BISHOP, WHITE & MARSHALL, P.S.

Jennifer Karol, OSB #072652
Attorneys for Plaintiff
Beneficial Oregon, Inc.

COMPLAINT FOR
DECLARATORY RELIEF - 8

BISHOP, WHITE & MARSHALL, P.S.
720 OLIVE WAY, SUITE 1301
SEATTLE, WASHINGTON 98101-1801
206/622-5306 FAX: 206/622-0354

EXHIBIT A

WHEN RECORDED MAIL TO

NAME  Records Processing Services

STREET ADDRESS  577 Lamont Road

CITY & STATE  Elmhurst, IL 60126

Recorded in MULTNOMAH COUNTY, OREGON
C. Swick, Deputy Clerk

C18  10  ATVLM
Total :  66.00

2007-117025  06/29/2007 10:27:22am

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST

**RESCINDED**

561709

THIS DEED OF TRUST is made this 26TH day of JUNE 20 07 , between the Grantor(s),
BRIDGET CANTY

(herein "Borrower"), REGIONAL TRUSTEE SERVICES
(herein "Trustee") and the Beneficiary BENEFICIAL OREGON INC.
a corporation organized and existing under the laws of DELAWARE whose address is
1307 NE 102 AVE, SUITE R, PORTLAND, OR 97220
(herein "Lender"). Witnesseth:

WHEREAS, Borrower is indebted to Lender in the principal sum of $ 200,789.41
evidenced by Borrower's Loan Agreement dated JUNE 26, 2007 and any extensions or renewals thereof
(including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for monthly installments of
principal and interest, including any adjustments to the amount of payments or the contract rate if that rate is variable,
with the balance of the indebtedness, if not sooner paid, due and payable on JUNE 26, 2037 ;

TO SECURE to Lender the repayment of (1) the indebtedness evidenced by the Note, with interest thereon,
including any increases if the contract rate is variable; (2) future advances under any Revolving Loan Agreement; (3) the
payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of
Trust; and (4) the performance of the covenants and agreements of Borrower herein contained, Borrower in consideration
of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with
power of sale, hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described
property located in the County of MULTNOMAH State
of Oregon:

LOT 12, BLOCK 9, COLUMBIA HEIGHTS, PORTLAND, MULTNOMAH
COUNTY, OREGON.

11-11-05 DOT  0R008011

-2-

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest (including any variations in interest resulting from changes in the Contract Rate that may be specified in the Note) on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Deed of Trust shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Deed of Trust is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Deed of Trust be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Monthy Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Deed of Trust or performing the covenants and agreements secured by this Deed of Trust.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2 or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Monthly Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Deed of Trust, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Monthly Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Monthly Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Monthly Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Monthly Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Monthly Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Monthly Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Deed of Trust as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Deed of Trust, as the phrase "covenant and agreement" is used in Section 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 12 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 35000, as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this security instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Prior Mortgages and Deed of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require. The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1, 2 and 3 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's rights to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Deed Of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorney fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the applicable Contract Rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. Inspection. Lender may take or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower and all other parties who are or who hereafter may become secondarily liable shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be

-4-

required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who consigns this Deed of Trust, but does not execute the Note, (a) is consigning this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the address stated in the Note or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing Law; Severability. The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws of the jurisdiction in which the Property is located shall apply except where such laws conflict with Federal law; in which case, Federal law applies. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs" and "expenses" and "attorney fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust, if requested, at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property. If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, (d) the creation of a purchase money security interest for household appliances, (e) a transfer to a relative resulting from the death of a Borrower, (f) a transfer where the spouse or children of the Borrower become an owner of the property; (g) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Borrower becomes an owner of the property; (h) a transfer into an inter vivos trust in which the Borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property; or (i) any other transfer or disposition described in regulations prescribed by the Federal Home Loan Bank Board, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Deed of Trust unless Lender releases Borrower in writing.

If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Deed of Trust to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, or as otherwise required by law, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall give notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or

DR009014

-5-

Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or to (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof including, but not limited to, reasonable attorney's fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, and if Lender is not committed to make any future refinancings or future advances, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled thereto. Such person or persons shall pay all reconveyance fees and costs of recordation, if any.

21. **Substitute Trustee.** In accordance with applicable law, Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

22. **Attorney's Fees.** As used in this Deed of Trust and in the Note, "attorneys' fees" shall include attorney's fees, if any, which shall be awarded by an appellate court.

23. **Arbitration Rider to Note.** The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Deed of Trust.

24. **Adjustable Rate Rider to Deed of Trust.** The Adjustable Rate Rider attached to and made a part of the Deed of Trust is hereby incorporated by reference and made a part of the Deed of Trust.

(THIS SPACE INTENTIONALLY LEFT BLANK)

11-11-06 DOT

ORD03D016

-6-

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ -Borrower
BRIDGET CANTY

_____ •Borrower

STATE OF OREGON, ___MULTNOMAH_____County ss:

On this __26TH__ day of __JUNE_____, 20 _07_ , personally appeared the above named __BRIDGET CANTY_____ and acknowledged the foregoing instrument to be____HER_____ voluntary act and deed.

(Official Seal)  November 26, 2008        Before me:
My Commission expires:

> OFFICIAL SEAL
> KARYN MC NICHOLAS
> NOTARY PUBLIC - OREGON
> COMMISSION NO. 385504
> MY COMMISSION EXPIRES NOV. 26, 2008

_____
Notary Public

STATE OF OREGON, _____County ss:

On this_____ day of_____, 20 _____, personally appeared the above named _____ and acknowledged the foregoing instrument to be _____ voluntary act and deed.

(Official Seal)                              Before me:
My Commission expires:

_____
Notary Public

### REQUEST FOR RECONVEYANCE

TO TRUSTEE:
The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Date: _____        _____

_____ [Space Below This Line Reserved For Lender and Recorder] _____

Return To:
Records Processing Services
577 Lamont Road
Elmhurst, IL 60126

11-11-05 DOT                                                        OR0080016

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 26th day of June, 2007, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to BENEFICIAL OREGON INC. (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

### 1731 NE HIGHLAND STREET
### PORTLAND, OR 97211

### [Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

## ADDITIONAL COVENANTS

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 6.850%. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the 26th day of June, 2009, and on that day every six months thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the London Interbank Offered Rate (LIBOR), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before

---

06/26/2007 20:00         Page 1 of 4         0226LE08



* C538F3D05M - 95 - ADR - 9 - 000 - 0226LE - Z - 1 - O ** CANTY ^ ORIGINAL

## ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

each Change Date is called the "Current Index." However, where the LIBOR Index is published in 1/64ths or any other increment requiring additional decimal places, the Note Holder will only use five decimal places. For example, if the Index rate published was 8.123456%, the Note Holder would use 8.12345% as the Current Index for that Change Date.

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give you notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding 1.470% to the Current Index. The Note Holder will then round the result of this addition to the nearest 0.125%. Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.850% or less than 6.350%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than 1.000% from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 12.850%. My interest rate will never be lower than 6.350%.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.



* C538F3D05M - 95 - ADR - 9 - 000 - 0226LE - Z - 2 - O ** CANTY ^ ORIGINAL

# ADJUSTABLE RATE RIDER
(LIBOR Index – Rate Caps)

**B.  TRANSFER OF THE PROPERTY OF A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property of a Beneficial Interest in Borrower

As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



## ADJUSTABLE RATE RIDER
### (LIBOR Index · Rate Caps)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

Borrower: _____   Date: _____
BRIDGET A. CANTY

08/26/2007 20:00                    **Page 4 of 4**                    0226LE08



* C538F3D05M - 95 - ADR - 9 - 000 - 0226LE - Z - 4 - O ** CANTY ^ ORIGINAL

LOAN REPAYMENT AND SECURITY AGREEMENT (Page 1 of 5)

**LENDER (called "We", "Us", "Our")**
BENEFICIAL OREGON INC.
1307 NE 102 AVE
SUITE R
PORTLAND OR 97220

**BORROWERS (called "You", "Your")**
CANTY, BRIDGET A
SS# 576881056
1731 NE HIGHLAND STREET
PORTLAND OR 97211

LOAN NO:

# RESCINDED



| DATE OF LOAN | FIRST PAYMENT DUE DATE | OTHERS SAME DAY OF EACH MONTH | SCHEDULED MATURITY DATE | | CONTRACT RATE (per year) |
|---|---|---|---|---|---|
| 06/26/2007 | 07/26/2007 | | 06/26/2037 | | 8.860 % |
| | AMOUNT FINANCED | PRINCIPAL | | | |
| | 199,999.39 | 200,769.41 | | | |
| | | CLOSING FEE | | | |
| | | 135.00 | | | |
| LIFE INS PREMIUM | DISABILITY INS PREMIUM | | | | |
| NONE | NONE | | | | |
| | | MARGIN | | | |
| | | 1.470% | | | |
| | | | | ORIGINATION FEE/POINTS | |
| | | | | 585.02 | |
| | MONTHLY INSTALLMENT | | | TAX SERVICE FEE | TERM |
| | 1,315.66 | | | 50.00 | 360 |
| | | DOC PREP FEE | DISABILITY INS TERM | | PREPAYMENT PENALTY | FLOOR |
| | | 200.00 | NONE | | YES | 8.360% |

YOU ARE GIVING US A SECURITY INTEREST IN THE REAL ESTATE LOCATED AT THE ABOVE ADDRESS.

**REQUIRED INSURANCE.** You must obtain insurance for term of loan covering security for this loan as indicated by the word "YES" below, naming us as Loss Payee:

YES      Title insurance on real estate security.
YES      Hazard insurance on real estate security.

You may obtain any required insurance from anyone you choose and may assign any other policy of insurance you own to cover the security for this loan.
(See "Security" paragraph above for description of security to be insured.)

NOTICE: THE FOLLOWING PAGES CONTAIN ADDITIONAL CONTRACT TERMS.

11-17-06 RE
1ST MTG OPT PPP



ORBS1341

*MC538F3D05M95CEA9000OR861341O**CANTY                *                ORIGINAL

## LOAN REPAYMENT AND SECURITY AGREEMENT (Page 2 of 5)

This Loan Agreement contains provisions allowing for changes in your interest rate, subject to the limits stated in this Loan Agreement. If your interest rate increases, your monthly payments will be higher. If your interest rate decreases, your monthly payments will be lower.

PROMISE TO PAY. In return for your loan described below, you promise to pay us, the Principal (Amount Financed plus prepaid finance charges of Origination Fee/Points, Closing Fee, Tax Service Fee, if any, and, if shown on your Settlement Statement, odd days interest) and Interest computed at the Contract Rate [subject to any adjustment under the Interest Rate and Monthly Payment Changes section below]. You also agree to pay us (a) any monthly insurance premium, if available in your state for this product and elected by you, and (b) any other charges as provided in this Agreement.

INTEREST. Interest will be charged on unpaid principal until the full amount of Principal has been paid. You will pay us interest at a yearly rate shown on Page 1 of this Agreement in the box labeled "Contract Rate." The interest rate you will pay will change in accordance with the Interest Rate and Monthly Payment Changes section of this Agreement.

The interest rate required by this provision and the Interest Rate and Monthly Payment Changes provision of this Agreement is the rate you will pay both before and after any default as described in this Agreement.

PAYMENTS:

(A) Time and Place of Payments. You will pay us principal and interest by making payments every month.

You will make your monthly payments to us on the same day of each month beginning on the First Payment Due Date shown on Page 1. You will make these payments every month until you have paid all of the principal and interest and any other charges described below that you may owe under this Agreement. Your monthly payments will be applied to interest before principal. If, on the Final Due Date shown on Page 1, you still owe amounts under this Agreement, you will pay those amounts in full on that date, which is called the "maturity date," which amount will include interest at the current Contract Rate.

You will make your monthly payments at the business address shown on Page 1 or at a different place that we may give you.

(B) Amount of Monthly Payments. Each of your initial monthly payments will be in the amount shown on Page 1 as "Monthly Installment", plus the amount of any funds for escrow you elected. Those amounts will change if the interest rate that you must pay changes. We will determine your new interest rate and the changed amount of your monthly payments in accordance with the Interest Rate and Monthly Payment Changes provision of this Agreement.

DOCUMENT PREPARATION FEE. You agree to pay the fee shown on page one for processing your loan and preparing your loan documentation. This fee is included in the Amount Financed.

INTEREST RATE AND MONTHLY PAYMENT CHANGES:

(A) Change Dates. The initial fixed interest rate (Contract Rate) that you will pay will change to an adjustable interest rate on the Due Date of the twenty-fourth (24th) month and the adjustable interest rate you will pay may change on that day every six months thereafter. The date on which your initial fixed rate changes to an adjustable interest rate, and each date on which your adjustable interest rate could change is called a "Change Date".

(B) The Index. Beginning with the first Change Date, your interest rate will be based on an Index. The "Index" is the London Interbank Offered Rate (LIBOR), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index". However, where the LIBOR Index is published in 1/64ths or any other increment requiring additional decimal places, we will only use five decimal places. For example, if the Index rate published was 8.123456%, we would use 8.12345% as the Current Index for that Change Date. If the Index is no longer available, we will choose a new index which is based upon comparable information. We will give you notice of this choice.

(C) Calculation of Changes. Before each Change Date, we will calculate your new interest rate by adding a fixed number of percentage points (called the "Margin") to the Current Index. The Margin on your loan is shown on Page 1 of this Agreement. The result of this addition will be rounded to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section (D) below, this rounded amount will be your new interest rate until the next Change Date.

We will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal balance of the loan you are expected to owe on the Change Date in full on the maturity date at your new interest rate in

NOTICE: THE FOLLOWING PAGES CONTAIN ADDITIONAL CONTRACT TERMS.

*C538F3DD5M95CEA90DD0RB6134ZO**CANTY          H          ORIGINAL          ORB61342

## LOAN REPAYMENT AND SECURITY AGREEMENT (Page 3 of 5)

substantially equal payments. The result of this calculation will be the new amount of your monthly payment.

(D) Limits on Interest Rate Changes. The interest rate you are required to pay on your first Change Date will not be greater than three (3) percentage points above or below the initial fixed interest rate (Contract Rate) shown on Page 1 of this Agreement. Thereafter, your adjustable interest rate shall never be increased or decreased on any single Change Date by more than one (1) percentage point from the interest rate you have been paying for the preceding six months. Your interest rate shall never be less than the Floor Rate shown on Page 1 of this Agreement. Your interest rate also shall never be greater than six (6) percentage points above the Contract Rate shown on Page 1 of this Agreement, which is called the "Maximum Rate."

(E) Effective Date of Changes. Your new interest rate will become effective on each Change Date. You will pay the amount of your new monthly payment beginning on the first monthly payment date after the Change Date until the amount of your monthly payment changes again.

(F) Notice of Changes. We will mail or deliver to you a notice of any changes in your interest rate and the amount of your monthly payment before the effective date of any change. The notice will include information required by law to be given to you and also the title and telephone number of a person who will answer any questions you may have regarding the notice.

PAY-OUTS. You agree to pay-outs of Amount Financed as shown on Truth-In-Lending disclosure form. If pay-outs change because loan closing is delayed, (a) you shall pay additional amounts due at closing, or (b) your cash or check will be reduced to cover additional pay-outs.

PREPAYMENT. Subject to the prepayment penalty described below, you may prepay your loan in full or in part at any time. If you pay off your loan early, you may have to pay a penalty and you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges.

PREPAYMENT PENALTY. If "YES" is printed in the Prepayment Penalty box on page one of this agreement, you agree to the following penalty. If you prepay in full within two (2) years of the date of this loan shown on page one, you agree to pay a prepayment penalty equal to six (6) months interest at the Contract Rate at the time of prepayment on the unpaid principal balance. No prepayment penalty will be imposed (a) if this loan is refinanced by another loan with us; (b) after two (2) years; (c) if the loan is prepaid from the proceeds of any insurance; or (d) if we sue you. Additionally, no prepayment penalty will be imposed if you pay the entire outstanding balance of your loan as the result of the sale of the property securing the loan. You must provide us with documentation acceptable to us verifying the sale of the property. To see the state maximum prepayment penalty amount, please refer to the "You Have Options" document that is incorporated into this agreement by reference.

LATE CHARGE. If you don't pay any payment in full within 15 days after it's due, you will also pay a late charge equal to 5% of the unpaid amount of the Monthly Installment.

BAD CHECK CHARGE. If you give us a check that is returned unpaid, you will pay a $25.00 fee.

SECURITY. You agree to give us a security interest in the real estate as described in the Deed of Trust.

REAL PROPERTY TAXES AND HOMEOWNERS INSURANCE. Homeowners Insurance covering fire and other hazards on the real property security is required, naming us as a loss payee for the term of your loan. You shall pay us on the day that monthly installments are due under this agreement, an additional sum (the "Funds") to be used to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Deed of Trust as a lien or encumbrance on the real property; (b) leasehold payments or ground rents on the real property, if any; (c) premiums for any and all insurance required by us under this agreement and the Deed of Trust ("Escrow Items"). You will pay us the Funds to Escrow Items unless we waive your obligation to pay the Funds for any or all Escrow Items. We may waive your obligation to pay us Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, you will be solely responsible for paying the amounts due for any Escrow Items directly and, if we require, you shall furnish us with receipts evidencing such payment within such time period as we may reasonably require.

PROPERTY INSURANCE:

A. Your Obligation to Insure. You shall keep the structures located on the real property securing this loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is cancelled or expires while the loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below.

NOTICE: THE FOLLOWING PAGE CONTAINS ADDITIONAL CONTRACT TERMS.

## LOAN REPAYMENT AND SECURITY AGREEMENT (Page 4 of 5)

B. LENDER'S RIGHT TO PLACE HAZARD INSURANCE. Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere. You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage. The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.

DEFAULT. If you do not pay on time, fail to keep required insurance in force, are in default under the Deed of Trust, have filed a proceeding under any bankruptcy or similar law, or such a proceeding has been filed against you, or have changed your residence since the time this loan was made: (1) all your payments may become due at once, and (2) without notifying you before bringing suit, we may sue you for the entire unpaid balance of Principal and accrued Interest, and (3) judgment in our favor may include our reasonable attorney's fee (if attorney is not our salaried employee).

CREDIT REPORTING AND CUSTOMER INFORMATION PRACTICES. If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. You agree that our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to you. You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by Applicable Law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents.

INSURANCE. Optional credit insurance and any required insurance disclosures are attached to this Agreement and are incorporated herein by reference.

ALTERNATIVE DISPUTE RESOLUTION AND OTHER RIDERS. The terms of the Arbitration Agreement and any other Riders signed as part of this loan transaction are incorporated into this Agreement by reference.

NOTICE: THE FOLLOWING PAGE CONTAINS ADDITIONAL CONTRACT TERMS.

11-12-06 RE
1ST MTG OPT PPP

*CS38F3D05M95CEA9000ORBS1344D*XCANTY

ORIGINAL

ORB61344

LOAN REPAYMENT AND SECURITY AGREEMENT (Page 5 of 5)

APPLICABLE LAW. This loan is made under Oregon law including the Usury Law, Section 82, ORS. This loan also qualifies as an "alternative mortgage transaction" under the Alternative Mortgage Transactions Parity Act section of the Garn-St. Germain Depository Institutions Act of 1982, Sections 3801 through 3806, Title 12, United States Code. Regulations issued by the Office of Thrift Supervision, Department of Treasury, also govern.

YOU HAVE RECEIVED A COMPLETE COPY OF THIS AGREEMENT AND THE TRUTH-IN-LENDING DISCLOSURES.

NOTICE TO BORROWER: DO NOT SIGN THIS LOAN AGREEMENT BEFORE YOU READ IT. THIS LOAN AGREEMENT PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO PREPAY THE LOAN PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE LOAN AGREEMENT.

BORROWERS:

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

WITNESS:

_____

NOTICE: THE FOLLOWING PAGE CONTAINS ADDITIONAL CONTRACT TERMS.

11-12-08 RE
1ST MTG OPT PPP

*C53BF3D05M95CEA90000RB613450**MCANTY       M                    ORIGINAL

ORB61345

EXHIBIT B

## NOTICE OF RIGHT TO CANCEL
### Loan Account

ORIGINAL LOAN NO: *Redacted*
CURRENT LOAN NO:

BORROWER(S):

BRIDGET A CANTY


PROPERTY ADDRESS:

1731 NE HIGHLAND STREET
PORTLAND, OR 97211


**Your Right to Cancel**

You are entering into a transaction that will result in a [mortgage/lien/security interest] [on/in] your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of this new transaction, which is June 26, 2007; or
(2) the date you received your Truth-In-Lending disclosures; or
. (3) the date you received this notice of your right to cancel.

☐ **Refinancing Existing Loan: (Disregard this paragraph unless the space to the left is marked with an "X").** You are entering into a new transaction to increase the amount of credit previously provided to you by us. Your home is the security for this new transaction. You have a legal right under federal law to cancel this transaction as stated above. If you cancel this new transaction, it will not affect any amount that you presently owe. Your home is already the security for that amount. Within 20 calendar days after we receive your notice of cancellation of this new transaction, we must take the steps necessary to reflect the fact that your home does not secure the increase in credit. We must also return any money you have given to us or anyone else in connection with this new transaction.

This paragraph does not apply if the "Refinancing Existing Loan:" box is mark with an "X". If you cancel the transaction, the mortgage or lien is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage or lien on your home has been cancelled, and we must return to you any money or property you have given to us or anyone else in connection with this transaction.

## NOTICE OF RIGHT TO CANCEL
### Loan Account

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address shown on page two (2) of this notice. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

---

**How to Cancel**

If you decide to cancel this new transaction, you may do so by notifying us in writing at:

BENEFICIAL OREGON INC.
636 Grand Regency Boulevard
Brandon, FL 33510
Attention: Rescission Unit

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of **July 7, 2008**. If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL.

Borrower: _____     Date: 7/3/08
BRIDGET A CANTY

## NOTICE OF RIGHT TO CANCEL
### Loan Account

**Acknowledge Receipt Only**

You acknowledge that you have received two (2) copies of the Notice of Right to Cancel.

Borrower: _____    Date: _____

BRIDGET A CANTY

# EXHIBIT C



July 10, 2008

Bridget Canty
1731 NE Highland St
Portland OR 97211

**Notice regarding your loan, original number** *Redacted*
                           **Current number**

Dear Bridget Canty:

We are in receipt of your executed Right to Cancel confirming your intent to rescind your loan.

As noted on the letter accompanying the Notice of Right to Cancel, you must return all loan proceeds received at the time of the original loan transaction. The amount required is $183,417.18 which is calculated using the loan proceeds less all interest, origination fees, servicing fees and principal paid. Money must be returned to the following address:

HSBC
Rescission Unit
636 Grand Regency Blvd
Brandon, FL 33510

If you have any questions, please call 888-327-9432.

Sincerely,

Marty Milella
Senior Vice President of CML Care Services